**UNITED STATES v. LICAVOLI.**

Cr. 20300.

United States District Court,
N. D. Ohio, E. D.

Feb. 7, 1952.

608

mittee of a Special Committee of the United States Senate at Cleveland, Ohio.

For a statement of principles governing the pertinency of the questions asked—the defendant's right to claim immunity against disclosures that would expose him to prosecution under state as well as federal law, and the rules by which justification of a witness's refusal to answer may be determined, reference is made to the opinion of this court filed this day in United States v. DiCarlo, D.C., 102 F.Supp. 597. Reference to the DiCarlo opinion is also made for a statement of the circumstances under which the questions were asked of the defendant.

The defendant Licavoli appeared as a witness before the Special Committee on January 19, 1951, immediately after DiCarlo. Defendant has a long criminal record and was also reputed to be a member of the so-called "Licavoli gang," of which Peter Licavoli was the putative head.

Like DiCarlo, this defendant was suspected of illegal activities constituting serious violations of the criminal laws of the state. He also answered most of the questions put to him by the Committee. Accepting the statement of his counsel as correct, it appears that 365 questions were asked and that the defendant answered all of these except the eleven questions set forth in the counts of the indictment.

The inquiries set forth in counts Nos. 1 and 10 are, in effect, the same question, the first being, "What is his business?"—and the latter,—"How is he earning his living now?".

In Hoffman v. United States, 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118, the court said: "The court should have considered, in connection with the business questions, that the chief occupation of some persons involves the evasion of federal criminal laws, and that truthful answers by petitioner to these questions might have disclosed that he was engaged in such proscribed activity."

By substituting the word "state" for the word "federal" in the foregoing statement, the above declaration of the Supreme Court becomes directly applicable here.

---

Don C. Miller, U. S. Atty., John J. Kane, Jr., 1st Asst. U. S. Atty., Cleveland, Ohio, for United States.

Fred H. Mandel, Cleveland, Ohio, for defendant Licavoli.

McNAMEE, District Judge.

Defendant herein was indicted under Title 2, Section 192 U.S.C.A. for refusing to answer pertinent questions when he appeared as a witness before a subcom-

Count 9, in which the question is,—"How has he earned his living since 1947?",—is in the same category.

Counts 2 to 7, inclusive, are inquiries relating to defendant's knowledge of—the business of the Girard Novelty Company—the persons associated in that business, and his reputed connections therewith. He refused to answer all such questions. These refusals must be considered in connection with the statements of the witness in answer to other questions in which he admitted that with the exception of being in the "storm window" business for a short time, he had never been engaged in a legitimate business.

The precise nature of the Girard Novelty Company's business is not apparent. Whether its business was legitimate, illegal, or a cover-up for illegal business, does not clearly appear. But it is indicated that one of the owners thereof is also the proprietor of a gambling place known as the "Jungle Inn." Defendant was also known as a "muscle" man. What was said in this connection in the DiCarlo case applies with equal force here.

The court cannot say that defendant would not have been incriminated by answers to the questions contained in counts 2 to 7, inclusive.

As Chief Justice Marshall said in United States v. Burr, (In re Willie) 1807, 25 Fed. Cas. p. 38, 40, No. 14,692: "* * * If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact. If the declaration be untrue, it is in conscience and in law as much a perjury as if he had declared any other untruth upon his oath; as it is one of those cases in which the rule of law must be abandoned, or the oath of the witness be received."

The same rule applies to defendant's refusal to answer the question contained in count No. 8, which is,—"What is the Triangle Variety Company of Warren, Ohio?".

The defendant's refusal to answer the question contained in count No. 11,—"Has he ever been in the gambling business with any one else?", was justified. An answer might have exposed him to prosecution for violations of the gambling laws and, in addition, furnished evidence of his involvement in more serious violations of state law.

The defendant is adjudged not guilty on all counts.